Our next case this morning is number 162634, Petter Investments v. Hydro Engineering. Mr. Lobben. Thank you, Your Honor. Good morning and may it please the court and respectfully to Judge Benson of Utah. Appellant Revere Company is represented here today first by its principal, Mr. Doug Petter. And we are here today as appellant imploring this court to resist the temptation to give only passing attention to this case. As from his rulings, it's clear that Judge Benson did. We're not giving passing attention. We've given oral argument. You're here able to present your case. We're not falling asleep. Understood, understood. Judge Benson made short work in a lot of his rulings and that's in part why we're here today. Obviously the substance of our claims and the evidence we presented we believe requires reversal in light of the substance of Judge Benson's rulings. Now when did you get to the substance? Yes, yes, Your Honor. The first error that we've asserted, and there are many errors, the procedural history of the case is long. But the first error was denying Revere's Rule 56 request for discovery necessary to oppose the early summary judgment motions that were brought just a couple of weeks after discovery opened. So in the normal course... But the summary judgment ruling didn't come down until discovery was complete and you had the opportunity to supplement the record, right? Yes, of course, Your Honor. In most cases, as the normal course, as this court's aware, you start discovery, you trade documents, exchange documents. Once you get your document discovery, then you take your depositions. It would be bordering on malpractice for an attorney to start taking depositions before he's confident that the other side has produced all of its key documents. In this case, the key documents to use in opposing summary judgment didn't come in until October of 2014. The brief opposing summary judgment had to be filed in July of 2014. So obviously the cart was before the horse here. But you're not addressing the possibility of supplementing the record before the ruling. Am I correct that the discovery was complete by the time of the summary judgment ruling? No. No. What's wrong with that? By the time of the ruling, yes. It was complete by the time of the ruling. Not by the time of the briefing. By the time of the ruling, the discovery was complete. By the time of the ruling, yes. But the whole purpose of Rule 56D is to put the brakes on the briefing and discovery. Because in order to oppose summary judgment, you have to get your evidence, marshal it, and present it in the form of a brief. Did you try to file a supplemental brief taking account of the evidence that was developed after the summary judgment argument? I filed a motion for reconsideration of the summary judgment ruling. After the ruling. But you didn't file any supplemental brief based on the additional material that you had developed in discovery between the time of the hearing on the summary judgment motion and the decision. That was, it was a matter of weeks over the Christmas holiday. The ruling came out. There was no supplemental brief, right? The supplemental brief was in the form of a motion for reconsideration. After the ruling. Correct. That's correct. That's correct. So, that's the first issue on appeal and I've given a summary of what we believe is an erroneous denial of that motion. And in substance, the denial of the Rule 56 motion hinged on the court's assessment, again in short form, that we hadn't identified any discovery. Well, the proof is in the pudding. I mean, first of all, we identified the discovery. Eight pages worth of, here's the documents we believe exist. Of course, we didn't have them. Here's the witnesses we need to depose that we haven't deposed yet. I don't know how much more specific you could be, but it was eight pages and the judge basically just said, no, it's not enough. So, we're going to deny the Rule 56 motion. And we assert that was erroneous. It's an abuse of discretion. The second issue was granting in substance the summary judgment motion on the misrepresentation claims. There were three summary judgment motions. But the principal issue for this appeal, because of the practical realities of the other issues, is the misrepresentation claims. And the court granted that motion, again, denying the Rule 56D and denying the reconsideration in a one-liner, even though Revere had some evidence that if the judge had applied the right standard, this court reviews de novo, but the district court, in the light most favorable to Revere. We had documents. We had declarations explaining in detail why, in bids to the government, Hydro presents their product while not complying with the governmental requirements for bids by explaining why it meets the particular requirements for the bid for anyone to be able to submit a bid. So by signing that bid, the government asked for a Ferrari, and they have a Fiat. They say, we'll submit our Fiat, and man, maybe the government won't notice. But they didn't make any misrepresentations about their product, did they? I find your misrepresentation claim baffling. It almost seems like you're making a bid protest in the guise of a state law misrepresentation claim. My reading of the record is they told the government exactly what their product was, and then it was up to the government to decide whether it met the specification or not. Well, government requirements for bids say that if the government says we need a Ferrari, then you have to be able to provide a Ferrari. A Ferrari does zero to 60 and whatever. A Fiat doesn't. So if all you have is a Fiat, you may be able to convince a government contract employee that your bid is the lowest, so we're going to look at yours first. The government also has technical teams to look at this stuff. I'm very familiar with how government bid protests and government contracting works. And if the government thought that their bid was noncompliant, it would have rejected it. And if you thought it was noncompliant, you had the right to make a bid protest to the GAO or to the Court of the Federal Claims. In at least one of these cases, it looks like you did go to GAO, but I didn't see that you went to the Court of Federal Claims on any of these. To kind of try to make a collateral attack on the government's award of a contract to your competitor through a state law claim seems – I don't even know that there's jurisdiction to do that in the district court, but it certainly doesn't seem like you've made any kind of genuine issue of material fact that they actually made a misrepresentation. You think they didn't comply, but that's a different question, isn't it? No, I don't think so. I think your Honor – Point to me what you thought is a misrepresentation of their product. The government – I don't care what the government's requirements are. Point to me where they said something about their product that is not true about their product. Well, in fundamental fact, they signed their bid, which under the – So your answer is you don't have a specific allegation that they made a specific misrepresentation about their product to the government. Your misrepresentation is that they misrepresented that it complied with the government's specifications. That overall, but in specific, for example, the government – one of the government visit issues says we need a stainless steel filter, and they said we have stainless steel components – Right. Is that untrue, that they have stainless steel components? Well, it's untrue that they have a stainless steel filter. They didn't say they had a stainless steel filter, though, did they? I understood. I understand. But the law of misrepresentation is that saying something in a way that's clever, that in context is a misrepresentation. What is untrue about their statement that they have stainless steel components? They don't have the key components as stainless steel. But your problem – you have many problems here. But your problem here is that with at least the first contract, the government said this is compliant with the solicitation. So you have a situation in which the party to whom the alleged misrepresentation was made says, no, there wasn't a misrepresentation. They told us what it was, and it complied with the specification. What case says under those circumstances that some third party can come in and say, well, the government doesn't know what it's talking about. It was the victim of misrepresentation, and we ought to redress it? I don't have a case for you. There's no case saying it can't. And certainly that argument wasn't raised below, and the court didn't issue a ruling on those grounds, so I don't know that that's right for review here. Certainly new arguments on appeal are not something I'm prepared to deal with, but that wasn't the issue below. The issue below was the judge denying discovery and then ruling even on the evidence that we had presented, which didn't include the real evidence that we got subsequently that we presented in the reconsideration. So in the real evidence, is there any other evidence of misrepresentation beyond your belief that they somehow bamboozled the government? Yes. What? Yes, there's deposition testimony. What does it say? I asked you what were the misrepresentations about their product, and the only one you said was they misrepresented that they had stainless steel filters. Do you have something beyond that? Yes. The deposition testimony presented in the reconsideration motion says, I asked their witnesses, two of them, when you submit a bid, you're saying it's meeting the salient characteristics that the government says. So you're again talking about whether it complies with the government, not any… They admitted that it doesn't comply with the bid specifications. But we're not here to address whether it complied with the government's specifications or not. The government agreed it did. If you wanted to challenge that, your avenue for challenge was a bid protest at the GAO or at the Court of Federal Claims. Those are other avenues. I can't imagine a district court is going to allow a collateral attack on a government procurement through a state law misrepresentation claim. Well, the court did allow it by not speaking to that issue. The court denied the motion. Well, it can deny your motion for about half a dozen reasons. It doesn't have to get to the really thorny question of whether you can have a collateral attack on a government procurement, since you still haven't pointed to any specific misrepresentations they made about their products, rather than compliance with the government's specifications. Well, all of the key evidence is in our briefing. I'm giving you my understanding of what we cited to. It should be very clear what our claim is and what our evidence is. I think it's very clear. You're trying to collaterally attack the government award of the contract through a misrepresentation claim because they didn't make any misrepresentations about the content of their products. You haven't pointed me to a specific single misrepresentation about their products, but keep pointing me back to the notion that they somehow misled the government. I understand perfectly what you're saying. Wouldn't any state law remedy of this kind be preempted by the federal procurement scheme? That wouldn't have been a good summary judgment motion. It wasn't brought below. What was brought below was that there's no evidence to support misrepresentations. We presented our evidence. We asked the court for time to conduct discovery. The court denied both, and that's why we're here. So I'll move on to the next issue, which is latches, which I think clearly needs to be reversed. Only if we find there are problems with the non-infringement finding, right? Because he just used latches to borrow a remedy. But if we agree that there's no infringement here, then it doesn't really matter. Correct. That's correct. So I'll skip over that. I just wanted to briefly mention latches. The next issue is related to the discovery issue in the 5060, denying the motion to extend discovery. Now, the district court has lots of discretion, but when a defendant files summary judgment motions in July while document requests are pending and then 10,000 pages of documents show up in mid-October with a discovery cutoff of December 1st, even wide discretion should not allow a court to deny an extension to discovery while the plaintiff is reviewing 10,000-plus pages of documents, figuring out what depositions he needs to take thereon, which, by the way, are the key documents. We did it, but we didn't do it by December 1st. And the fact of the matter is that the defendant himself, the defendant itself, needed more time for discovery. But in order to keep our feet to the fire, wanted to hold that December 1st cutoff. We both agreed to take depositions after December 1st, so we're asserting an abuse of discretion under the circumstances of this case. A document dump, no time to review it, discovery cutoff comes, we're out of luck. On the claim construction issues, obviously de novo review here. Generally, the court's orders on claim construction were very short and sweet. We don't think that the court got it right, and we're asking this court to get it right. There are five claim terms at issue on this appeal that we've raised. Five terms, and only two of them affect the infringement finding, right? Well, depending on the result, yes. But there are five terms that we've raised on this appeal. Two they've included in their opposing briefs. We think basically the court misinterpreted its role in the use of intrinsic evidence, importing limitations into the claims from the specification. The court... The only two issues are the meaning of great and evacuation. Those are the only things that affect the non-infringement finding, right? Yes, but we have three other claim terms that affect our ability to argue infringement, either by literal infringement or doctrine of equivalence. So that's why we raised them on this appeal, so we can get it right now and go back and present our case. Okay, you're well into your rebuttal time. We'll give you two minutes for rebuttal. Thank you. Mr. Miller? Thank you, Your Honors. May it please the court. Mark Miller on behalf of Hydro Engineering. I'll begin by addressing the Rule 56d motions and the misrepresentation claim just briefly. The fact is, although they felt the motion for summary judgment was prematurely filed, it certainly wasn't prematurely granted. Their 56d motion said, give us more time. They were given an additional six months before the motion was granted. And in that entire time, they never sought to supplement the record. They had opportunity. And in fact, during the summary judgment hearing, Judge Benson said, I'm willing to let you go beyond this motion. Tell me what your evidence is. This was in November. Their 56d motion was filed in July. And in November, he said, go beyond the motion. Do whatever you need to do. Tell me what you have. And their response. Where do I find that in the record? That is found at Appendix 4763, I believe. What's following that? I want to double check that. It's actually 4781. Appendix page 4781. The court says. The court says at the bottom of the line 24, it is not that hard. I am willing to let you go past this motion. And especially since they are not raising the standing issue. But if you can show me where you have some basis to allege that they told the army this. And they didn't do what they said they were doing. And Mr. Lavin's response was, at that point, he says, well, what I have is in the record. This was November. Now, after this, there were more depositions taken. And Mr. Lavin did not try to supplement the record. Between the depositions in December and the court's ruling, there was an entire month. Did the motion to extend the discovery period relate entirely to the misrepresentation claims? The motion to extend discovery related primarily to third-party discovery. What claims? The misrepresentation claims. No, no. The third-party discovery they were seeking was to some third parties that had to do with some infringement claims. But that was not. During the hearing on their motion to extend the deadline, they represented an open court. We have everything we need from Hydro. We need no more discovery directly from the defendant. That was November 13th. We have everything we need from them. We just need third-party stuff. But then they served their first deposition subpoena. Two weeks before the close of discovery. And they served seven of them that were facially unreasonable. And we moved to quash. That was granted. And they don't appeal the decision granting the motion to quash in this appeal. Now, beyond the misrepresentation claim, there's a few things I want to point out with regard to the patent infringement claims. First, on the 774 patent. The undisputed facts are that Hydropad with the conveyor in it. We have the components that would apply to what their patent calls an evacuator are at one end of the side trough. And the components for the elevator are at the opposite end. That's an undisputed fact about our configuration. The other undisputed fact about our product is the wire stream, which would in their patent be called the debris collector, is inside the side trough. And the pump is outside. Those are the undisputed facts. With those facts, there's three independent bases you can affirm judgment of non-infringement for the 774 patent. The first basis is easy. It's affirming the claim construction of evacuation end. And we've put forth the intrinsic record on that. The second basis is one that they have never opposed or disputed, either below or even here. And that is the disclaimer argument about the evacuator. During prosecution, they distinguished Hydro's own prior art and said, to have an evacuator, it has to be a separate component. Meaning the debris collector and the fluid mover, all those components have to be separate from the side trough. They can't be in the side trough the way it was in Hydro's prior art. Well, our product has one of those components in the side trough. So they do not have a complete evacuator outside the side trough. That's non-infringement as a matter of law. And I want to point something out. In their reply brief on page 9, there's a footnote in their reply brief where they address this argument for the first time in the case. But they address it passingly, and they claim that we never raised this below. They say, despite not being raised below, this argument doesn't pass muster. It was raised below. It was raised below in our summary judgment motion, and we devoted five full pages of argument to this disclaimer argument. And they never rebutted it in their opposition. And in appendix 4412 through 17, that's where you can find where we raised this argument below. And I think that's an independent reason to find non-infringement of the 774 patent. Another independent reason would be to just look at the claim language at the end of the 774 patent claim, which states it explains how the conveyor moves the debris and liquid to the evacuator, and then the debris is lifted from the evacuator. You can't satisfy that claim language if the elevator is not at the same end as the evacuator. There's three independent ways you can affirm non-infringement of the 774 patent. Moving to the 298 patent, the term grate, if you look at the intrinsic record, it's clear that a grate is a porous surface that allows the water and debris to flow through it. You're washing these cars on these big steel pads. And back in the 90s, the way they built these, the common way was you had a grate, and everything would fall straight through it, and you had a basin. And to clean it out, you couldn't be washing anything. You'd have to take the car off. You'd have to lift up the grate and clean it out. That's the way they were done. That's what their patent applies to. Hydro in the early 2000s changed their design and went to an impervious top. They wanted to be able to clean out the side trough even when they're washing cars, even when there's a car on the pad. You can go to the side trough and shovel out the dirt. And so they got a patent on their impervious top side gutter portable wash pads. Every single court or tribunal that's evaluated and compared these patents has concluded that hydro's impervious top is different than Revere's grate. A grate is porous. It allows things to fall through it. That's evident in the claim language itself. Claim one says four sidewalls, a bottom surface, and a basin with a grate on top, and the grate allows water to flow through into the basin. The specification says multiple times the grate has openings in it sufficient to allow water and debris to flow through it. There's no intrinsic evidence that Revere, the plaintiff, has ever cited to support their construction of grate. They only cite to online advertisements for the George Foreman Grill, which have no application to this industry whatsoever. And under the Doctrine of Equivalence, Revere clearly waived their right to rely on the Doctrine of Equivalence by never asserting Doctrine of Equivalence allegations in their infringement contentions. This court's decision in Genentech, which we cite in our brief, is directly on point in interpreting this type of local patent rule, implementation of that local patent rule, is along the lines that this court described as nonsensical. So they waived Doctrine of Equivalence, and even if the court considered their Doctrine of Equivalence argument, the sole evidence they presented was one sentence that was conclusory in nature from their expert. They had an expert declaration that said, and I find that this, that the way they do, that their impervious top accomplishes the same, you know, task in the same way to get the same result, period. That's never enough to avoid summary judgment. One sentence in conclusory fashion from an expert. Based upon the findings of the district court and the record before this court, we find it clear that there's no infringement of the 298 patent. There's no infringement of the 774 patent. And there's no basis to allege false advertising or misrepresentation with regard to the government contracting situations. Unless the court has any other questions, I have nothing to add. Thank you, Mr. Miller. Thank you, Your Honor. With my additional time, I'll just address some of these issues. On the contentions on infringement, the balance of the cases actually favors our position. Courts have said, look, you've got a claim construction. You've got battling contentions. Your job is not to present a claim construction under multiple different scenarios. If the court does this, if the court does that, if they allege this, we're alleging that. Now you've got four different sets of claim constructions, literal doctrinal equivalents. You present your contentions, and our contentions were literal infringement. They presented their contentions. You get a claim construction. Now you sit back. Every local rule is the same, including Utah. And the cases support our position. Now you ask the court, well, wait a minute. Your claim construction court is very different from what we propose. So let's take a step back and see if we still have a case here. And if we need to amend our contentions, addressing doctrinal equivalents, which we indicated we would do way back when in the initial and the final infringement contentions, then the court should allow that. And courts have always allowed that. Frankly, the local rule says in your initial contentions, you have to say what's your contention. Is it literal or doctrinal equivalents? Well, ours was literal. Now the claimant issued a claim construction. Look, that's not anything we imagined. So now we're going to – does our case go forward? Of course it does. You amend your contentions in light of the court's claim construction. That should be standard. So that's a basis on the last basis that we argued for on our appeal. The balance of the cases clearly favors us. In terms of his claim construction argument on great, he talks about the hydro system and the subsequent systems. They got a patent on their system. That's fine. Our patent is earlier. A subsequent patent on a new design doesn't mean that that design doesn't infringe an earlier patent. This is basic genus species stuff. So that evidence is irrelevant. It's as irrelevant as he contends the George Foreman grill is. I contend that that's an obvious example of how a great doesn't have to always look like the crosshatch thing that you have on your basic Weber grill that you find down at the department store. A great is also what the George Foreman grill looks like, which is exactly what the accused infringing product is. So that affects the great claim construction. He talks about the 774 patent. We didn't oppose the disclaimer argument. That's something that we did oppose. We didn't agree with the examiner's suggestion in the prosecution history that the claim be read narrowly based on figure six of the patent. And if you look at claim one versus claim eight, it's a clear claim differentiation, standard claim differentiation position. Claim eight says both have to be on the same end, which means claim one is broader. They can be on the same end or opposite ends. That's our 774 argument. I think we're out of time, Mr. Plotman. Thank you. Thank you. Thank you both, counsel. Thank you. Thank you. Thank you, your honor.